IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHAUNA STEVENSON,

                Plaintiff,             Case No. 3:08 CV 166

  -vs-

                                              MEMORANDUM OPINION

OWENS STATE COMMUNITY
COLLEGE, et al.,

                Defendant.

KATZ, J.

This matter is before the Court pursuant to a motion for partial summary judgment and dismissal (Doc. 9, 10) by Defendants Owens Community College ("Owens") and certain of its administrative officials ("Individual Defendants") in their official capacities against Plaintiff Shauna Stevenson, whose claims seeks prospective injunctive relief. Plaintiff filed an opposition to Defendants' motion (Doc. 15) to which Defendants timely replied (Doc. 18). The sole issue before this Court at this juncture is whether Defendants are immune from Plaintiff's claims pursuant to the Eleventh Amendment.

**I.    Background**

On or about August 8, 2006, Plaintiff Stevenson enrolled in her final year in the Sonography Program at Owens. In October of that year, Plaintiff removed a compact disc from school grounds that she thought may have contained confidential patient information on it, which if so containing, would be a violation of program and school policy. When Plaintiff realized that the disc was in her possession, she attempted to view the information at her home but found no readable medical information on it.

After attending class on October 10, 2006, Plaintiff approached her instructor for advice as to how she should properly handle the possible infraction that had occurred. The instructor told Plaintiff to destroy the compact disc immediately into small pieces, which Plaintiff did. The instructor also then broke the disc into further pieces. Thereafter, Plaintiff's instructor had a conversation with the sonographer who had actually produced the disc on October 9, 2006. They concluded that no physical evidence exists that the disc contained identifiable patient medical information on it, and the sonographer informed the instructor that there was not total certainty that any material properly transferred onto the disc in the first place.

On October 17, 2006, Plaintiff received a failing grade from Owens along with a dismissal and permanent bar from its Sonography Program. Plaintiff thereafter had a choice to seek appeal of Owens' decision via one of two procedural options afforded to students who find themselves in such circumstances. The first option was for students seeking to address complaints related to grade disputes (Group I offenses). The second option related to administrative actions – all matters except grades (Group II offenses). Here, Plaintiff complied with three initial steps common to both the aforementioned options. On November 3, 2006, the Vice President of Academic Affairs at Owens denied Plaintiff's complaint as a Request for Grade Appeal. This action put Plaintiff's appeal formally into Group I, the procedure for appealing grade disputes. Plaintiff's attempt to then appeal through steps associated with non-grade Group II matters was unsuccessful because her correspondences seeking such an alternative path received no reply from Owens.

**II.      Standard of Review**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III.     Discussion**

Plaintiff Stevenson seeks declaratory and prospective injunctive relief on her claim filed before this Court alleging a violation of her due process rights pursuant to 42 U.S.C. § 1983. Defendant Owens and the Individual Defendants maintain that they are immune with respect to Plaintiff's section 1983 claim. Specifically, Owens relies on the Eleventh Amendment, which prohibits the federal courts from exercising jurisdiction over suits against state entities absent those defendants' consent. *Ala. v. Pugh*, 438 U.S. 781 (1978); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Additionally, the Individual Defendants rely on qualified

immunity as a shield that protects the reasonable actions performed under their discretionary roles as officials of an arm of the state. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

### A. Owens is immune from suit as a state entity beyond the scope of 42 U.S.C. § 1983.

The issue here is whether Owens is an entity of the state because the Supreme Court has held that state entities are not "person[s]" that can be sued under 42 U.S.C. § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989). In the Sixth Circuit, *Hall v. Med. Coll. of Ohio*, 742 F.2d 299 (6th Cir. 1984) is the controlling standard of whether an entity is an "arm of the State." In *Hall*, the court determined that the institution then known as the Medical College of Ohio ("MCO") at Toledo was an "arm of the state" protected by immunity in federal court. In making that determination, the court considered the following factors:

> the status of state colleges and universities (including the Medical College of Ohio) under Ohio's law of sovereign immunity and the Court of Claims Act, as well as the sources of revenue available to MCO, its performance of a governmental function, its non-corporate nature, and the fiscal and academic restraints imposed upon the school by state law . . . .

*Hall*, 742 F.2d at 307.

With regard to how the state courts treat the entity for state sovereign immunity purposes, Ohio courts have held that state community colleges organized under Ohio Rev. Code Chapter 3358, like Owens, are state entities protected by Ohio's sovereign immunity. *See Miller V. Wash. State Cmty. Coll.*, 698 N.E.2d 1058 (Ohio Ct. App. 1997) (holding that suits against Washington State Community College (Ohio) must be brought in Ohio Court of Claims); *see also Mihalcin v. Hocking College*, Franklin App. No. 95API06-760, 1995 WL 739686 (Ohio Ct. App. Dec. 14, 1995) (distinguishing technical colleges from state community colleges). Those cases rely on an

unreported case from the Southern District of Ohio that analyzed in detail the Ohio statutes and concluded that state community colleges are arms of the state immune from suit in federal district court.[1] *Nimmo v. Southern State Community College*, Case No. C-I-83-738 (S.D. Ohio Nov. 19,

---

[1]

The federal district court for the Southern District of Ohio reasoned as follows:

> Ohio has statutorily created, inter alia, three types of institutions for higher education. They are, the state college or university * * * the state community college * * * and the community college. The first, the state college or university, is clearly an arm of the state * * *. The third type of institution, the community college, is not an arm of the state; rather it is a political subdivision * * *. Ohio courts have not ruled upon the status of institutions in the second category of which SSCC [Southern State Community College] is a member. The Court holds that, for the following reasons, SSCC, a state community college, is an arm of the state of Ohio * * *.
>
> * * * A state community college district is created by the Ohio Board of Regents pursuant to R.C. 3358.02. Although a 'state community college district' is called a political subdivision in O.R.C. Section 3358.01(A), this nomenclature is neither explained in, nor supported by, the rest of the statute. In comparison, a community college district, also named a political subdivision in the statute's definitional section, O.R.C. Section 3354.01, has its status further defined in O.R.C. Section 3354.03 which is captioned 'District to be political subdivision.' Section 3354.03 provides in relevant part:
>
>> A community college district organized pursuant to section 3354.02 of the Revised Code shall be a political subdivision of the state and a body corporate with all the powers of a corporation, existence, with power to sue and be sued, to incur debts, liabilities, and obligations, to exercise the right of eminent domain and of taxation and assessment as provided in sections 3354.01 to 3354.18 inclusive * * * .
>
> Such a section is conspicuously absent from chapter 3358, nor is Section 3354.03 cross-referenced to apply to state community colleges as are other sections of chapter 3354. See O.R.C. Section 3358.10. Moreover, because a state community college has not been given the power to sue or be sued, it appears that Ohio considers the state community college an arm of the state to be covered by the Court of Claims Act, O.R.C. Section 2743.01-.20, in which the state specifically consents to be sued before the Court of Claims.

(continued...)

6

1985). This Court agrees with that analysis and accepts these cases as authority that Ohio courts treat community colleges as arms of the state.[2]

---

$^1$(...continued)
\* \* \*

Many other indicia of SSCC's overall lack of autonomy from the state exist in the statutes. For example, all nine trustees of SSCC are appointed by the governor with the advice and consent of the senate. O.R.C. Section 3358.03.
\* \* \*

In sum, taking into account the status of state community colleges in comparison with state universities and community colleges, the Court concludes that SSCC is not autonomous from the state \* \* \* .

*Nimmo v. Southern State Community College*, Case No. C-I-83-738 (S.D. Ohio Nov. 19, 1985).

[2] Plaintiff makes much of *Hall*'s footnote 2, indicating in passing that a community college, university branch, technical college, and state community college district should be considered a political subdivision. *Hall*, 742 F.2d at 304, n.2. However, this note merely indicates that, over time, the Ohio legislature has made provisions for the establishment of political subdivisions by "local initiatives, not directly by state statute." *Id.*; *See* Ohio Rev. Code Ann. §§ 3354.01-.18. "[B]y implication all other colleges and universities established *directly* by Ohio statute should not be considered 'political subdivisions' but instead 'institutions' or 'other instrumentalities' of the state." *Hall*, 742 F.2d at 304, n.2.

Here, Plaintiff has not sued Owens State Community College District, a political subdivision under Ohio. Rev. Code § 3358.01(A), but instead Owens State Community College. Because a state community college district is a geographic region under Ohio. Rev. Code § 3358.01(A), Plaintiff's classification of Owens is improper. A state community college is a separately defined institution distinct from the district it services, and therefore the definition does not describe Owens as a political subdivision. Ohio. Rev. Code § 3358.01(B). Moreover, a district can exist without the community college and can have a basis that goes beyond a particular district. Ohio Rev. Code § 3358.07 (recognizing that a district can exist before a college exists and that state community colleges can be partially operated by other colleges and universities).

Plaintiff fails to provide evidentiary support as to why this Court should conclude that Owens is not a direct establishment of Ohio statute. Furthermore, other courts since *Hall* have found state community colleges to be state entities. *Nair v. Columbus State Cmty. Coll.*, 2008 U.S. Dist. LEXIS 11988 at 28-30 (S.D. Ohio 2008); *Miller v. Wash. State Cmty. Coll.*, 698 N.E.2d 1058 (Ohio Ct. App. 1997).

7

*Hall* also considered whether the state treasury will be affected by any liability from the entity's actions. *Hall*, 742 F.2d at 304-5. Owens points to decisions by the Ohio Court of Claims that have found Owens liable as evidence that the state pays Owens' damages. *See Wheeler v. Owens Cmty. Coll.*, 2005-Ohio-181 (Ohio Ct. of Claims 2005). Almost forty percent of Owens' financing stems from the state, much like the situation in *Hall*. *Hall*, 742 F.2d at 304 (relying on an affidavit from the president of MCO, citing total revenues consisted of twenty-four percent in 1974 to fifty-four percent in 1979, and overall comprised thirty six percent of the total revenues in years 1974 through 1979). Therefore, any recovery by Plaintiff will likely be satisfied with state funds under Ohio Rev. Code § 3358.09.

Owens additionally maintains that the post-secondary education that it provides serves a similar government function to that found in *Hall* and therefore supports the conclusion that Owens is a state entity. *Hall*, 742 F.2d at 305. Additionally, *Hall* indicates that an important factor in determining an entity's status is whether it has an independent corporate status or the power to sue and be sued. *Id.* at 305-06. Owens is a state community college organized under Ohio Rev. Code Chapter 3358, which indicates that, unlike other types of community colleges, it is not a corporation nor is it given the power to sue and be sued. *Cf.* Ohio Rev. Code §§ 3354.01(A), 3354.03 (controlling community colleges, a distinct type of institution from state community colleges, such as Owens).

Owens meets the *Hall* factors and is properly considered an arm of the state. Eleventh Amendment immunity is properly afforded to Owens in the present circumstances.

**B.     The Individual Defendants are immune.**

8

The Supreme Court has established that qualified immunity shields "government officials performing discretionary functions . . . so long as their action could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638. Such officials are presumed to be protected by qualified immunity as a "general rule" and the Supreme Court has characterized it as almost a "guarantee of immunity." *Id.* at 639, 646 (citations omitted). Furthermore, the Sixth Circuit has placed the burden of disproving qualified immunity on the plaintiff, *McCloud v. Testa*, 97 F.3d 1536, 1542 (6th Cir. 1996); *Wash. v. Newsome*, 977 F.2d 991, 995 (6th Cir. 1992), and maintained that by seeking to overcome this burden a plaintiff must show that the right being asserted has been "clearly established." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

> The key inquiry in analyzing a claim of qualified immunity is whether the defendant's alleged conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 638-40, 107 S.Ct. at 3038-39; *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir.1989). The burden is on the plaintiff to allege and prove that the defendant official violated a clearly established constitutional right.

*Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994)

Plaintiff has not shown that the Individual Defendants could not have reasonably thought that Plaintiff's dismissal was academic, and that therefore, having provided sufficient due process for academic discipline, they did not violate clearly established federal law. The multiple discussions between the Individual Defendants and Plaintiff satisfied the constitutional due process requirements for an academic dismissal, because no hearing is necessary so long as the dismissal process was careful and deliberate for reasons that question a student's aptitude for his or

9

her field of study. *Bd. of Curators v. Horowitz*, 435 U.S. 78, 86 (1978). In fact, Plaintiff does not dispute adequate process for an academic dismissal or that she was given at least that much process, but instead argues that qualified immunity is not available because her dismissal was disciplinary in nature for specific conduct.

Plaintiff's dismissal was based on specific conduct that can be deemed academic in nature if there is a nexus between the relationship of conduct and the prospects of success in a student's field of study. *See Fenje v. Feld*, 398 F.3d 620, 626 (7th Cir. 2005). It is reasonable to assume that disregard for patient confidentiality has a correlation to the degree of success a student in a medical discipline such as Plaintiff's might require. *See Firester v. Bd. of Governors of Wayne State Univ.*, 1990 U.S. App. Lexis 12167, at \*6 (6th Cir. 1990) (determining medical student's dismissal based on habitual improper behavior with patients deemed an appropriate measure to prospecting likelihood of being a good doctor). Plaintiff's contention that no breach of confidentiality occurred because her home computer was unable to access the compact disc does not affect the analysis. The important fact here is that Plaintiff *thought* medical records were accessible, and she failed to follow proper procedures in place to protect that information. Plaintiff's failure to dispute the facts showing her disregard for confidentiality was properly considered by Defendants to have a direct link to her fitness to work in the medical field, which supports the proposition that her dismissal was reasonably considered to be academic. In addition, Plaintiff has failed to provide evidentiary support for the position that no relationship exists between such conduct and a student's likelihood for professional success. *But cf. Lee*, 747 F.2d at

1062 (different where the employee's discharge did not involve the related academic/disciplinary distinction).

Plaintiff argues that a genuine issue of material fact exists because administrators gave Plaintiff a document about the disciplinary action procedures for non-grade Group II offenses. However, on that same day, Plaintiff was explicitly charged with a Group I grade offense. The fact that Owens distributed information on both procedures is inapposite in light of the explicit delineation of her offense as grade-related. No genuine issue of material fact exists based on this evidence.

Because the Individual Defendants were acting reasonably in considering that respect for a patient confidentiality procedure might be indicative of some measure of success in the medical field, this Court finds that the Individuals were reasonable in treating Plaintiff's violation as a basis for academic discipline, rather than as other misconduct. As such, this Court finds that the Individual Defendants are protected by qualified immunity.

### IV. Conclusion

For the reasons discussed herein, Defendants' motion for partial summary judgment and dismissal is hereby granted (Doc. 9).

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE